**UNITED STATES of America, Plaintiff,**

v.

**LOCAL 6A, CEMENT AND CONCRETE WORKERS, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, et al., Defendants.**

No. 86 Civ. 4819 (VLB).

United States District Court,
S.D. New York.

Sept. 30, 1986.

Randy M. Mastro, Robert L. Ullman, Asst. U.S. Attys., New York City, for the Government.

Jed S. Rakoff, Mudge Rose Guthrie Alexander & Ferdon, New York City, for defendant Local 6A, Cement and Concrete Workers Union.

Maurice N. Nessen, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant Dist. Council of Cement and Concrete Workers.

Stanley M. Meyer, DePetris & Meyer, New York City, for defendant Carmine Persico.

Harold J. Boreanaz, Boreanaz, Baker & Humann, Buffalo, N.Y., for defendant Dominic Montemarano.

Jay Breakstone, Slater, Vanderpool & Breakstone, Garden City, N.Y., for defendant Ralph Scopo.

Gennaro Langella, pro se.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

Plaintiff United States of America (the "Government") has brought this action under 18 U.S.C. § 1964, the civil remedies provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.[1] It moves for preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure against the following defendants: (1) Local 6A, Cement and Concrete Workers Union ("Local 6A"), (2) Executive Board of Local 6A and various members and officers joined individually, (3) District Council of Cement and Concrete Workers ("District Council"),[2] (4) Executive Board of the District Council and various members and officers joined individually, ("Local 6A" and "District Council", their executive boards and individual members and auditors thereof hereinafter the "union defendants"), (5) the Columbo Organized Crime Family of La Cosa Nostra ("Columbo Family"), and the following alleged members of the Columbo Family: Carmine Persico, Gennaro Langella, Dominic Montemarano and Ralph Scopo.

The preliminary injunctive relief sought by the Government includes, *inter alia*, barring Columbo Family members from participating in union affairs or in the construction industry; barring union defendants from acting on behalf of Local 6A or the District Council; and the appointment, *pendente lite*, of one or more trustees to conduct the business of Local 6A and the District Council during the pendency of this action.

### II.

The Government has filed this civil suit pursuant to the RICO statute following the

---

**1.** Section 1964 provides in pertinent part:

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibition, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

\* \* \* \* \* \*

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

**2.** The District Council consists of, and oversees the operations of, four affiliated unions, including Local 6A.

jury verdict of "guilty" on June 13, 1986 with respect to defendants Persico and Langella (and seven other individuals not defendants in this action) after an eight month jury trial in the Southern District of New York before U.S. District Judge John F. Keenan. *United States v. Carmine Persico, et al.*, 84 CR 809 (JFK).[3] In support of the relief it seeks, the Government relies on the evidence adduced at the criminal trial to establish the existence of the Columbo Family and the corruption of Local 6A and the District Council by the Columbo Family.

· The Government moved by order to show cause for this preliminary relief on June 19, 1986. Oral argument was held on June 27, 1986. At that time, counsel for defendant Scopo advised the court that he would not contest the preliminary relief sought by the Government.[4] Counsel for defendant Persico, in denying the allegations in the complaint, argued at the hearing that there has been no conviction of his client, since motions are pending with respect to the verdict, sentencing has not occurred and appeals will follow. Nonetheless, defendant Persico has essentially acceded to the Government's application, taking "no position with regard to the relief requested by the government...."

The union defendants, however, vigorously contest the Government's application for preliminary injunctive relief. They argue, *inter alia*, that the application is months, even years stale as the Government's case depends largely on evidence fully developed by 1984, that basic facts are disputed and therefore an evidentiary hearing must be held, and that in any event the balance of equities tips decidedly in favor of the union defendants. After the June 27 argument, I granted the parties time to submit additional materials.

### III.

■ The Government's application for preliminary relief is granted as to those individual defendants who were charged in *United States v. Persico, et al.*

Messrs. Persico and Langella were found guilty of conspiracy to participate and of participation in a pattern of racketeering activity in violation of 18 U.S.C. § 1962. Neither of them is in a position, in light of the estoppel provisions of 18 U.S.C. § 1964(d), to deny the Government's charges.

Defendants Scopo and Montemarano were also indicted in the *Persico* case, but they were severed and have not yet gone to trial. Montemarano has filed no opposition to the Government's application as it applies to him. He has, in this action, executed a stipulation that if called to testify he would decline on the basis of his constitutional privilege against self-incrimination. Scopo has consented to an order of preliminary relief herein, which has been entered as against him.

I find that on the showing the Government has made in its moving papers it will probably succeed on the merits as to these defendants, and that probable irreparable harm will be suffered by the public, by union members and by those engaged in the construction industry if this relief is not granted.

The Government will submit an appropriate order to implement this determination, to the extent that it has not yet been implemented.

### IV.

■ I turn to the union defendants' contentions that the Government's application for preliminary relief is untimely. The union defendants argue that the Government's proof was fully developed in late 1983 and at the very least at the time the indictment was returned in *U.S. v. Persico* in 1984. Furthermore, they argue that the evidence adduced at the *Persico* trial itself

---

**3.** The jury convicted Persico and Langella of conspiracy to participate and participation in a pattern of racketeering activity in violation of 18 U.S.C. § 1962. Defendants Scopo and Montemarano were also indicted in the *Persico* case, but their cases have been severed and they have not, at this date, gone to trial.

**4.** On August 11, 1986 I signed an order of preliminary relief against Ralph Scopo, on consent.

demonstrated that no wrongdoing had occurred since the arrest of Ralph Scopo in October 1984. The union defendants also maintain that the Government must show present RICO violations to secure the relief it seeks. They claim the Government cannot obtain preliminary relief on the basis of stale and outdated circumstances, when preliminary relief by definition is marked by the imperative of urgency.

The Government asserts that its proof is not stale: "the likelihood that racketeering activity is continuing in this case can and should be inferred from the defendants' past criminal conduct, which has included participation in an industry-wide, multi-million dollar extortion scheme over a period of several years in association with ... the Columbo Organized Crime Family." It argues that it has submitted evidence that wrongdoing continues even as this motion is pending: defendant Scopo received a huge severance bonus and a luxury car from the union leadership last year; the union has the same officers today as it had when the wrongdoing proven at the *Persico* trial took place from 1981 to 1984. The Government contends that it has pursued a "reasonable and prudent course" by first bringing its criminal case and then, after the jury verdict in the criminal case, filing this civil RICO case and seeking injunctive relief.

Delay in seeking equitable relief such as a preliminary injunction may in certain situations be grounds for denial of such relief. *See Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985); *Silverman v. Local 3,* 634 F.Supp. 671, 673 (S.D.N.Y. 1986). The general rule parallels the ancient maxim that "equity aids the vigilant, not those who slumber on their rights." *See* 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2946 at 417 (1973). The Second Circuit has held that a "[l]ack of diligence ... may ... preclude the granting of preliminary injunctive relief ..." *Majorica, S.A. v. R.H. Macy & Co., Inc.,* 762 F.2d 7, 8 (2d Cir.1985). The question before me is whether, in applying these standards, the Government's conduct has been "so lax as to indicate a reduced need for immediate action." *Iris Arc v. S.S. Sarna, Inc.,* 621 F.Supp. 916, 925 (E.D.N.Y.1985).

The union defendants rely on *Citibank.* However, *Citibank* was a trademark infringement case, involving a dispute between private litigants, and is inapposite.[5] This is not to say that the standards *Citibank* enunciates are necessarily inapplicable to cases where the Government seeks equitable relief. The standards it enunciates do apply to the Government in certain cases, as the defendants underscore. *See Silverman,* 634 F.Supp. at 673 (NLRB denied injunction for unexplained delay of over three months); *Danielson v. International Brotherhood of Electrical Workers Local Union No. 501,* 509 F.2d 1371, 1375 (2d Cir.1975) (Regional Director of NLRB failed to appeal denial of injunction in timely manner).

However, this is not one of those cases. While a civil RICO action by definition is not excluded from equitable principles,[6] this is a virtually unprecedented civil RICO action brought by the Government to remove union officers after a criminal trial to which these officers were not parties, and to replace them with one or more trustees appointed by the court.[7] Whatever the

---

**5.** The Second Circuit in *Citibank* appears to limit its discussion of delay in seeking relief to trademark cases. After it enunciates the general principles, it states: "Significant delay in applying for injunctive relief *in a trademark case* tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." 756 F.2d at 276 (*emphasis added*).

**6.** The Seventh Circuit has stated that "[t]he conditions under which an injunction will be issued pursuant to Section 1964 are determinable from the principles that govern the granting of equitable relief." *U.S. v. Cappetto,* 502 F.2d 1351, 1358 (7th Cir.1974), *cert. den.* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975).

**7.** There are only two other reported cases in which the Government has sought comparable relief. *See U.S. v. Local 560, International Brotherhood of Teamsters,* 581 F.Supp. 279 (D.N.J.1984), *aff'd.,* 780 F.2d 267 (3d Cir.1985), *cert. den.* —— U.S. ——, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *U.S. v. Ianniello,* 86 Civ.

rules may be in other cases, even in other RICO cases, they provide little guidance in a *sui generis* case such as this one.[8]

Injunctive relief looks to the future, and if I were to find the Government's application to be untimely, I would have to be "satisfied that there is no reasonable expectation of future injurious conduct." 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2942 at 371–72 (1973). On the facts brought to my attention by the Government in this case, I am anything but satisfied that there is no such expectation.

The Government argues that it has evidence of continued wrong-doing, and that the union defendants must be seen to be inextricably linked to the defendants found guilty in the prior criminal action. Without ruling on the merits of these contentions at this juncture, I find that the Government has every right to pursue its application for preliminary relief in this case, and that its pursuit is timely. Whether or not there has been wrongdoing since 1984—defendants assert there has not—goes to the strength of the Government's evidence but not to its staleness.

I reject the union defendants' assertions of untimeliness, and proceed to consider whether an evidentiary hearing should be held before I can decide whether the injunctive relief sought should be granted.

## V.

█ The union defendants argue that basic facts are in dispute, and that an evidentiary hearing is therefore required as a matter of law before the Government may obtain the relief it seeks. In brief, they claim that the Government is relying for the relief it seeks on inadmissible hearsay in the form of out-of-court tapes and trial testimony from *U.S. v. Persico.* They dispute the facts the Government alleges and

the inferences the Government asks me to draw from those facts. The union defendants contend that in the Second Circuit they are "entitled to the opportunity, through discovery and at an appropriate hearing, to challenge this hearsay with good evidence and to cross-examine the declarants."

The defendants also rely on *U.S. v. Local 560 of the International Brotherhood of Teamsters,* 780 F.2d 267, 273 (3d Cir.1985), *cert. den.* — U.S. ——, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986) and *U.S. v. Ianniello,* 86 Civ. 1552 (CSH) (S.D.N.Y. April 16, 1986) [Available on WESTLAW DCT database] to support their position. They emphasize that in *Local 560,* a case factually comparable to this case, the trial court held a 51–day bench trial before issuing injunctive relief which included the appointment of a trustee to run a union; and in *Ianniello,* the court rejected any effort to transform criminal convictions into civil injunctions without a "full plenary trial."

The Government submits that there is no need or legal requirement for an evidentiary hearing before granting the preliminary relief it seeks. Although it concedes that there are cases where a court should hold an evidentiary hearing to flesh out factual issues, it contends that in this case the court has the benefit of a substantial record developed at the eight month criminal trial in *U.S. v. Persico.* Because the testimony of witnesses at the criminal trial, as well as recordings of conversations involving various Columbo Family members, are before the court, the Government argues that this case is different from *Local 560* and *Ianniello,* and no hearing is necessary. The Government claims the difference between this case and *Local 560* is that in the latter, there had been no comprehensive criminal RICO action as there has been here. It also argues that *Ianniello* should be limited to its facts—the relief

---

1552 (CSH) (S.D.N.Y. April 16, 1986). *Local 560* and *Ianniello* will be considered *infra.*

**8.** The union defendants contend that this RICO case is not an exception to the aforementioned equitable principles. But in support of this position, all they cite is a line from Judge Cardamone's dissent in the Second Circuit's decision

in *Sedima* which is taken out of an entirely different context, *Sedima S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 504–05 (2d Cir.1984) (Cardamone, J., dissenting), *rev'd* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Their argument is not persuasive.

the Government sought there was a receiver for an Italian restaurant.

While the government has evoked the estoppel provisions of the civil RICO statute, 18 U.S.C. § 1964(d), the provisions are irrelevant as applied to the union defendants, since they were *not* parties to the prior criminal action.

The Government asserts, however, with much merit, that many of the facts supporting its application for injunctive relief are undisputed, thus obviating the need for a hearing. These facts, including the *Persico* jury findings and the Union's post-trial payments and gifts to defendant Scopo, would in and of themselves, according to the Government, warrant the grant of the relief it seeks.

"When one or both parties support or oppose [a] preliminary injunction application on written evidence, if there is no conflict about the facts, the preliminary injunction will be granted or denied on the basis of the undisputed evidence without difficulty." 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2949 at 474 (1973). However, the Second Circuit and other courts have consistently ruled that a preliminary injunction motion will not be granted if facts are in dispute, on the basis of a written record. *Id.* at 475. *See also* 7 *Moore's Federal Practice* ¶ 65.-04[3] at 65–60 (2d ed. 1986); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 59 (2d Cir.1981). In an often cited decision, Judge Friendly wrote that "[d]ecisions on the extent to which Fed.R.Civ.P. 65 requires a district court to take evidence rather than rely on affidavits before granting or refusing a temporary injunction reflect a tension between the need for speedy action and the desire for certainty and complete fairness." *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir. 1968). This "tension" is present to a fare-thee-well in this case.

The Government has a demonstrated need for expeditious action. An eight month criminal trial preceded this action, and the evidence adduced at this trial is the foundation on which the Government relies in support of its application. There is in-volved in this case a pressing consideration of public interest—that management-labor relations not be dominated by, and corrupted by, criminal elements. There are also more particular interests that may not be directly represented before the Court, although the thrust of the Government's application is on behalf, *inter alia*, of these interests: those of the rank-and-file union members and those of the construction industry.

While I accept the argument of the union defendants that they are not bound by collateral estoppel with respect to a trial in which they were not parties, I reject their consequential argument that I may not consider evidence that was developed in the course of that trial. The government must establish to my satisfaction that failure to grant the injunctive relief it seeks will result in substantial harm, and that it will probably succeed on the merits, or that there are substantial litigable issues and that the balance of hardships, if an injunction does not issue, will be borne by the Government itself, or by those on whose behalf it seeks an injunction.

The significance of the substantial delay in seeking injunctive relief, in the context of this case, is not that it indicates the lack of need for injunctive relief, but that it suggests that a slight further delay, to give the union defendants the opportunity to bring to my attention evidence to rebut that offered by the government, is not unwarranted. In this connection I would note again the very strong showing the Government has already made that criminal domination of the union defendants continues: i.e., the substantial severance payment of more than $200,000 given to Ralph Scopo after his indictment, together with a cadillac automobile; and the continued presence, in positions of union control, of Mr. Scopo's relatives, and of the officers who were in power in the heyday of Scopo, *et al.*

I do not intend, therefore, to schedule a full-blown trial with respect to the Government's evidence which is already before me. What I shall schedule is a hearing which will be limited in time and subject

matter, to give the union defendants the opportunity to bring to my attention such evidence as will be relevant in ruling upon the Government's preliminary injunction application.

A conference will be held on October 3, 1986 at 10:30 a.m. in Room 2703 to schedule the limited preliminary injunction hearing to be held.[9]

SO ORDERED.

**9.** I have in this memorandum order left unanswered a variety of questions: (1) whether the Government need show irreparable harm to secure the relief it seeks; (2) whether the Government's proof is legally competent; (3) whether a trustee can be appointed in a case such as this one; (4) whether the federal labor laws prevent this invocation of the RICO law to take control of a union; and (5) various representation problems the Government claims exist as between the union defendants and their counsel. I leave these issues for another day.